FILED
2008 Oct-17  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| COLEMAN NABORS, JR., | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:08-cv-01384-LSC |
| | ] | |
| PECO FOODS, INC., | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

The Court has for consideration Defendant's motion to compel

arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*,

and to stay this action pending the conclusion of arbitration.  (Doc. 6.)  The

motion has been briefed by the parties and is ripe for review.

I.      Procedural Background.

On August 1, 2008, Coleman Nabors, Jr. ("Nabors") filed a complaint

against Peco Foods, Inc. ("Peco Foods"), seeking damages based on Breach

of Contract and violations of the Packers and Stockyard Act, 7 U.S.C. § 192.

Plaintiff filed his action in the U. S. District Court for the Northern District

of Alabama, Western Division, based on federal question jurisdiction.  On

August 22, 2008, Peco Foods filed a motion to compel arbitration and stay proceedings pursuant to the the Arbitration Clause contained in the two contracts between Peco Foods and Mr. Nabors.

II.    Facts.

Mr. Nabors is a former grower of commercial poultry for Peco Foods. (Doc. 7 at 2.)  In that capacity, Mr. Nabors was responsible for growing a flock of baby chicks into "broilers" suitable for the commercial market. (Doc. 7, Exs. 3 & 4, ¶s 1, 10.)  Once the broilers were ready for processing, Peco Foods would take custody of the flock, paying Mr. Nabors according to a set schedule.  *Id.*  Mr. Nabors and Peco Foods entered into an agreement ("Agreement") in both 2004 and 2006 establishing the rights and responsibil-ities of each party.  (Doc. 7, Exs. 3 & 4.)  Both Agreements include an Arbitration Clause requiring arbitration in the event of "[a]ny dispute, claim or controversy arising out of or relating to this Agreement, including any renewals or extensions hereof, or the breach, termination or validity hereof." (Doc. 7, Exs. 3 & 4, ¶18.)  Furthermore, the requirement that the parties engage in arbitration encompasses disagreements "including but not limited to the arbitrability" of disputes between the parties.  *Id.*  In other

words, if the parties have a dispute about the appropriateness of invoking arbitration for a specific conflict, that dispute itself is reserved to the judgment of the arbitrator.  Finally, both Agreements mandate that disputes "shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association by a single Arbitrator." *Id.*

In his lawsuit, Plaintiff alleges that the Defendant violated the duty of good faith and fair dealing and that the Agreements between the parties are unconscionable contracts of adhesion.  Plaintiff also alleges that the Defendant violated the Packers and Stockyards Act by engaging in unfair, unjustly discriminatory, and deceptive practices.  He seeks actual damages, statutory damages, punitive damages, attorney's fees, and costs.

III.   Analysis.

Plaintiff argues that this dispute is not subject to binding arbitration for three reasons.  (Doc. 14 at 1.)  First, Mr. Nabors believes that the case does not qualify for arbitration because the arbitration clauses in the Agreements fail to provide notice that they cover federal statutory claims, limit the relief the arbitrator may award, and lack a severability clause. *Id.*

Page 3 of 11

Second, Mr. Nabors argues that the terms of the arbitration clauses are ambiguous, and that a fair reading circumscribes the scope of the arbitration agreement to disputes with Peco employees, and other narrow contractual issues. *Id.* Finally, Mr. Nabors argues that each arbitration clause is contained in a contract incorporating practices which are unlawful under federal law, rendering the entire Agreement, including the arbitration clause, void. *Id.*

Defendant Peco Foods contends that the arbitration clause in each Agreement is valid and binding, and that all of Mr. Nabors' claims fall within its ambit. (Doc. 15 at 3-4.) More importantly, Peco Foods claims that because the arbitration clause "clearly and unmistakably" provides that issues of arbitrability are to be decided by the arbitrator, the Court need not determine the validity of the Plaintiff's defenses to arbitration. (Doc. 15 at 1-2.)

A. Arbitrability.

In *First Options v. Kaplan*, the Supreme Court addressed the issue of who should determine arbitrability. 514 U.S. 938 (1995). The Court opined that questions regarding the jurisdiction of the arbitrator were "fairly

Page 4 of 11

simple."  *Id.* at 943.  In a unanimous opinion, the Court  determined, "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."  *Id.* (internal citations omitted).  In determining the parties intent, the Court warned that the lower courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *Id.* at 944 (internal citations omitted).

The Eleventh Circuit took up the question of arbitrability in *Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005). *Terminix* involved a 131-count, 246-page, 937-paragraph complaint alleging violations of the Florida Deceptive and Unfair Trade Practices Act, criminal racketeering, criminal false advertising, fraud, negligence, breaches of the duty of good faith and fair dealing, and breach of contract.  *Id.* at 1329. Terminix sought enforcement of an arbitration agreement contained in the contracts between the two parties.  *Id.*  Palmer Ranch contended that the arbitration agreement was unenforceable because it deprived Palmer Ranch

Page 5 of 11

of "statutory remedies and rights including punitive damages, treble damages, damages and injunctive and declaratory relief under the FDUTPA, and attorney's fees." *Id.*  The district court held that because the arbitration clause contained remedial restrictions and no severability clause, it was not enforceable. *Id.* at 1331.  The Eleventh Circuit reversed, saying that the district court not only misunderstood precedent, but also decided an issue expressly reserved by the parties to the judgment of an arbitrator.

The Court stated that ordinarily it would determine issues that "go to the validity of the arbitration clause itself, which is by default an issue for the court, not the arbitrator." *Id.* at 1333.  But in this case, the Court noted that "the parties have contracted around that default rule," leaving the Court with "no reason for us to decide the subsidiary, antecedent questions." *Id.*  The Court determined that the parties clearly and unmistakably evidenced their intention to have arbitrability determined by the arbitrator by incorporating the Commercial Arbitration Rules of the American Arbitration Association,  which mandate that the arbitrator will determine his own jurisdiction. *Id.* at 1332 (quoting American Arbitration Association Rule 8(a), which states "the arbitrator shall have the power to rule on his

Page 6 of 11

or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"); *See also, CitiFinancial Corp., L.L.C. v. Peoples*, 973 So. 2d 332, 340 (Ala. 2007) ("We find the reasoning of the Eleventh Circuit . . . persuasive and hold that an arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision.").

While jurisdictional questions may be reserved to the arbitrator, disputes that strike at the heart of the clause, those that would render it void *ab initio*, are not for the arbitrator to decide.  The Supreme Court has held that "if the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the making of the agreement to arbitrate -- the federal court may proceed to adjudicate it."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).   In *Buckeye*, the Court essentially restated the rule in *First Options*; if the arbitration clause itself is void *ab initio*, there is no agreement to arbitrate, and therefore no authority to submit conflicts of any sort to an arbitrator.

In the instant case, the parties not only incorporated the Commercial Arbitration Rules, but also explicitly stated that disputes as to arbitrability would be decided by the arbitrator.  Furthermore, the Plaintiff's have made no arguments that would render the arbitration agreement itself void *ab initio.*

By incorporating the Commercial Arbitration Rules and explicitly stating that the arbitrator would determine the scope of the arbitration clause, the parties clearly and unmistakably evidenced their intention to submit matters of arbitrability to the arbitrator.  The Agreements state that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement . . . including but not limited to the arbitrability of such Dispute . . . shall be resolved by mediation and/or binding arbitration in accordance with the procedures specified in this Section."  (Doc. 7, Exs. 3 & 4, ¶18.) Moreover, as in *First Option* and *Terminix*, the arbitration clause in each Agreement states that binding arbitration will be held "in accordance with the Commercial Arbitration Rules of the American Arbitration Association by a single arbitrator."  *Id.*

Since the parties plainly agreed to submit conflicts to arbitration, the Court must look to whether Plaintiff can show that the arbitration agreement itself is void *ab initio*. Plaintiff makes three arguments in opposition to arbitration, only the first of which strikes at the agreement to arbitrate itself. Plaintiff contends that because the Agreements' arbitration clause fails to inform Mr. Nabors that it purports to cover federal statutory claims, limits relief the arbitrator may grant, and lacks a severability provision, the clause itself is void. Ultimately these arguments fail. As noted above, in *Terminix* the Eleventh Circuit deferred to the arbitrator to determine issues relating to severability and limitations on relief. *Terminix,* 432 F.3d at 1332-33. Furthermore, Plaintiff's argument that the arbitration agreement failed to specify that it covered statutory claims seems to be an issue that is ripe for arbitration. As Plaintiff notes in its argument, "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation." (Doc. 14 at 3.) While an arbitrator might ultimately interpret the clause in question to not cover statutory claims, that sort of determination goes to the scope of the agreement, not its inherent validity.

Plaintiff's final two arguments are similarly unavailing.  First, Plaintiff contends that the scope of the arbitration clause is circumscribed to "the four corners" of the Agreement, and that the terms of the clause are ambiguous and limited to disputes with Peco employees.  (Doc. 14 at 7, 11.) These arguments relate to the coverage of the clause, not its inherent validity, and fit squarely within the jurisdiction of the arbitrator.  Finally, Plaintiff concedes that, in regards to its final argument claiming the Agreements are void for illegality, the Supreme Court has held that challenges to the validity of the entire contract are subject to arbitration. (Doc. 14 at 15 n.8.) (citing *Buckeye Check Cashing*, 546 U.S. at 440.))

Because the parties have clearly contracted that arbitrability be determined by an arbitrator, this Court need not determine the validity of Plaintiff's objections to the appropriateness of arbitration in this case. Those questions are left to the arbitrator to determine, in accordance with the parties express will.

IV.   Conclusion.

The Agreements between the parties clearly and unmistakably evidence their decision to submit questions of arbitrability to arbitration.

Therefore, Defendant's motion to compel arbitration will be granted.  A

separate order will be entered.

Done this 17<u>th</u> day of <u>October 2008</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671